I will advise all counsel now that if you're not familiar with the practices in the Ninth Circuit, the clock in front of you tells you how much time you have left. If you wish to reserve time for rebuttal, it is your responsibility to monitor your own time. When the red light comes on, you're out of time. The clock continues to run. It's telling you now how far over your time you are. So, please watch your time accordingly. Counsel? Good morning, and may it be of course. My name is John Baird, and I'm here for Appellant David Menken. When law students are taught appellate advocacy at law schools, they tend to be taught about the main cogs in the appellate wheel, the standards of review, the record, prejudicial error. But there's one thing that is sometimes overlooked and that then is overlooked in practice as well, and maybe because it sounds a bit unglamorous, and that is the importance of the district court docket and of the sometimes complex rules that surround the interpretation of what is on the docket and when it appears. And I think in this case, appellees did indeed pay insufficient heed to the docket. They first rushed into court with a motion to dismiss, saying that the appeal was untimely simply because it was filed more than 30 days after the order dismissing the action. Well, that plainly is wrong. I think that since then they have acknowledged the existence of the separate document rule and the need for Rule 79a also to be satisfied. But they do cling, however, to this theory that Rule 58b2b means that the time to appeal expired 150 days after that initial order. Well, that's not what the rule says. It's not what the authority that discusses that rule says. It is, I think, wishful thinking, because the 150 days starts the time to appeal in the absence of a separate document. Of course, in this case, we've got the added complexity of the fact that the initial order was misdocketed, and so you can make an argument that the 150 days wouldn't have even started until it was correctly docketed, which happened to be the day on which the notice of appeal was filed. Now, I don't know whether in the 18 months or so since this case was briefed, Mrs. Tomlin has thought further about Rule 58b2b. If she has, I'll comment more in my rebuttal, unless the Court has questions. I'll move to the merits of the case. On the merits, it is in some ways hard to engage with Appelli's argument about what I think is the main issue, which is the effects test, because they don't get very much into that issue, preferring instead to hang their hat mainly on the argument that this is being raised for the first time on appeal. I don't think it is. Could trial counsel have done maybe a better job in setting forth the definitive treaties on the effects rule? Absolutely. Would it have been helpful if in his briefing he had actually used the phrase the effects rule? Absolutely. But did he nonetheless put that issue in front of the Court? I believe he did. Of course, the whole of it, he clearly put in front of the Court his belief that there was personal jurisdiction in this case. Counsel, let's back up just a little bit. Would you just give me just a very, very succinctly what the minimum contacts are with Arizona that you've put into play here? Well, the minimum contacts can be looked at in two ways, the actual actions that were done and the effects that they had. Okay. Let's start with the actual actions. Okay. With the actual actions, putting aside the effects, we've got some which on their own would certainly not create jurisdiction, the making of phone calls, the mailing of letters. If you look purely at the actions, it's not our case that those actions, independent of their effects, do create jurisdiction. I understand. Let's start with the actions. Yeah. Arguably, arguably the filing of a lien, well, that's a little more of an action when you actually go into the forum state, file a lien, and encumber property. Does it make a difference that the lien was being filed in enforcement of a Nevada judgment? I don't think it does, actually. I wouldn't see how conceptually it does. They went into the forum state. They filed the lien. That, I think, is an action in the State where they were taking advantage of what that State had to offer. And having taken advantage of what they had to offer, I don't think they can turn around later on and say, well, you know. Is this a way of chilling their full faith and credit rights, though? I don't think it's a way of chilling their full faith and credit rights. I mean, they could have been. They can't enforce the judgment without being subject to judgment themselves in Arizona. That would tend to. It would be a bit of the exercise of the right, wouldn't it? Well, Your Honor, I wouldn't agree with that. And the reason is that the action that Mr. Mencken brought against them wasn't because they tried to enforce the judgment. It was because they tried to get more than double what they were entitled to under the judgment and were misusing a lien. If you go into court and you just try and enforce a judgment. All right. So in addition to filing the lien, then, you're – if I understand you, I want to put words in your mouth, Mr. Derrick. But if they were – in addition to filing the lien, they also attempted to collect monies in excess of the actual judgment in Nevada. Indeed. Exactly. Which they claimed were owing as a result of all the trouble that your client had put them through by avoiding judgment. But no court had ever said that. That was just their view as to what they should be entitled to. They just took the view, well, you know, we think we've spent an awful lot of money chasing Mr. Mencken, so we want to be compensated. What other contacts have you got? I think those are the key ones. I mean, they tried to set up a judgment debtors' exam. It never took place. And I wouldn't say that the effort to do so really amounts to that much. So I think that we've probably reviewed the main ones, because I'm not going to suggest that phone calls in and of themselves and things like that and letters. How do you get from the judgment itself, filing the judgment, to the actual lien on the real property? It's not clear from my review of the record that we learned that at all.  Is there a separate document that needs to be filed? No, no. My understanding, and you're correct, it's not entirely clear from the record, and I wasn't myself involved in any of this there, but my understanding is that they actually did file whatever you have to file in Arizona to do that. So they took an affirmative step. That's my belief, but it's not entirely clear from the record. And didn't they actually just file an abstract of judgment? Did they file an abstract of judgment? That's what I'm asking. I'm assuming that's what they did. They simply took a sister State judgment. They filed it of record in Arizona. Do you know of anything else in the record? There's nothing else in the record beyond that, other than a lot of references to the word lien, which suggests that there may have been something which went beyond that. But is there anything in Arizona law that tells us, that you found, that tells us how that process works in the Arizona statutes, for instance? How do you get from filing the judgment to the actual lien? Your Honor, I'm not able to answer that question right now, and I could provide some supplemental briefing on it. But I'm not aware, as I stand here today, of the specific method under Arizona law that you go from A to B there. But I do think, though, that the effects do indeed need to be considered, because I think that the law is clear that with a tort action, and this is a tort action, it is not the actions that count, but the effects. And I think that rule is probably all the more important in the era in which we live now, when, because of technology and the way the world has changed over the last quarter of a century, it's increasingly irrelevant in many aspects of life where you are. Well, the effects are pretty obvious. This was an encumbrance on the property, and so he was not able to offer good title to any subsequent purchaser of the property. Well, those effects are pretty obvious, I think. Indeed. And I think those are what are drivers, and that's what creates jurisdiction. I'm mindful of my time, and I wanted to save some time for rebuttal. But I do believe, wrapping up, that the reason there is jurisdiction under Calder and the other authority, Brainard, is because it was a tortious act deliberately aimed at a citizen of Arizona. Before you sit down, I'll ask my colleague to give you a little bit more time on the rebuttal. I'm an old real property lawyer, and I'm puzzled as to why there would be effects here, because any title company will write over an abstract of judgment and give a buyer clean title. Why wasn't that done? Well, Your Honor, that would indeed may be an issue for trial, when this case is allowed to be tried. But it goes to whether there was, in fact, an effect. If the net impact of a filing of an abstract of judgment could have been done away with by a title policy writing over it, the posting of a bond or whatever arrangements had to be made with the title company, does that not do away with the effect that you hang your jurisdictional hat on? Not for the purpose of establishing a jurisdiction in the first instance. And here, Your Honor, is why. And the reason is that if there is no evidentiary hearing on a jurisdiction motion, the facts as pleaded have to be assumed to be correct. And I believe that here Mr. Mencken went into court and saying, well, under the facts of this case, the fact that there was this lien meant that I did lose this sale and that I was $400,000 out of pocket. I think that that means that we have to assume that there was this causal connection. The question Your Honor raises may indeed be one that will have to be addressed, but I don't think it has to be addressed from the point of view of establishing jurisdiction. Right. So for your purposes, you believe that we do not have the authority to look at the actual facts, if you will, in terms of the effects of the filing of what I understand to be an abstract of judgment. Well, I think that the courts – I hesitate to tell this Court what its authority is. It sounds rather presumptuous. But I think the role of a court reviewing jurisdiction is that absent an evidentiary hearing, you have to assume the facts as pled to be true. And I think the question that you raise, Your Honor – Well, refresh my recollection here. Were we dealing – are we dealing with the 12b-6 situation here or a summary judgment? The 12b-6, Your Honor. Okay. So we would have to accept the facts literally as pled at this point. Indeed, Your Honor. Okay. Thank you. Thank you, and good morning. I'm Vincent Credat.  May it please the Court. Mr. Mankin pins his jurisdictional case in the court below on three facts, three facts only. That's in the record, page 61. He sets them out. Those are the only ones he uses. Okay. Why don't you give us those just to refresh our recollection? Well, that Ms. Tomerlin initiated a, quote, collection matter in the District Court of Arizona, that she recorded her judgment in Maricopa County, and that there were letters and phone calls between counsel for the parties in negotiation of the payment of the judgment. The lower court correctly analyzed the situation, and the first case, which is Danis v. Ziff Davis Publishing, is right on point. That's an Arizona court of appeals case that specifically held that the domestication of a foreign judgment does not create the necessary contacts in the foreign state. Now, is that a due process judgment under the 14th Amendment, or is that under the Arizona long-arm statute? So is that a matter of State law, or is that a judgment as a matter of Federal law? The court in that case held it was a matter of Federal law. Okay. So this is a Burger King International, shoe, penoyer v. Neff kind of problem. Yes, and the specific Federal law of reference is the Uniform Enforcement of Judgment Act. That is the Federal authority that permits somebody like Tomerlin to domesticate her judgment somewhere other than in the random state. So you are able to confirm, then, that what happened here wasn't abstract, that judgment was recorded. There was no lien recorded in the sense of some new enforcement mechanism. That's correct. The judgment, the domestication, part of the domestication process, and this was argued and even mentioned in Judge Murguia's decision below, that the domestication process and the recordation process are one and the same for purposes of what that judgment creditor is physically doing. And they really are one and the same. It's not like the situation in the Cher case where the attorneys had filed a deed of trust along with the client. That is different. That's not what happened here. Do you agree that the effects test applies, or do you disagree with the application of the Calder test here? I think the law is clear that the effects test does apply in a tort case when there are allegations of a tort, and there are some allegations of tort in this case. So, yes, Your Honor. All right. And if the Yahoo on Boncourt found sufficient contacts applying the effects test with the foreign judgment in France, potentially impacting Yahoo in California, how would you distinguish that from this case? I'm not as familiar with that case, Your Honor, as I am with the one that Mr. Mankin primarily relied upon, and that's the Calder case. The facts in that case, Your Honor, I can't distinguish the facts. But in the Calder case, which is what Mr. Mankin relies upon, that is where we have the National Enquirer publishing 600,000 copies of defamatory material in California in the foreign state. So you have a much greater interjection in the foreign state in that case than we do here, and that is easily distinguishable. But you still have to go back to what the facts and what the actions were taken. And if we look, and again, this is the only argument that was made below, the effects test, no, it wasn't mentioned by name. Does it have to be? Probably not, but it sure needs to be enough, needs to be developed enough so the trial court can pass on the issue. And you've read her decision. You've read the briefs. There was no mention of probably 80 percent of what Mr. Mankin is now trying to bring before this Court, which was not presented to Judge Murgillo. But let's assume that the mere attempt to collect the Nevada judgment in Arizona would not be a sufficient contact for the exercise of personal jurisdiction. What do we do with the additional fact alleged by Mr. Mankin that your clients attempted to collect money in addition to the recorded judgment in Nevada? Now, whether that's justified or not, I don't want to get into that. I don't think that's before us as to whether they were justified in doing that. They were obviously very frustrated and very angry with Mr. Mankin for having avoided the judgment. But when — if I recall the facts correctly, I think Mr. Mankin agreed to satisfy the judgment in Nevada and that your clients were not satisfied with that, said, no, in addition to what's barely on the paper in Nevada, we are now out these additional funds for trying to collect this, and you're going to pay that or we're not going to do it. Now, doesn't that go beyond your argument about merely enforcing a judgment? There were no other — And why isn't that sufficient if he thinks he's got an action in tort? Again, I'm not going to make any judgment here as to whether I think that action has any merit whatsoever. But why doesn't it — why isn't it sufficient for the exercise of personal jurisdiction? It's still just a letter. There was a letter sent between counsel where Mr. Mankin said, I believe the judgment is X. My client's attorney said, we believe the judgment is Y. You need to pay it. They came to a standstill. Nothing happened after that. Had Mr. Mankin actually taken some formal action to have a — whether it be declaratory relief, a hearing — it would have been a 10-minute hearing, Your Honor — to bring the parties together under the cause number that was domesticated in Arizona and have a court commissioner or a judge decide, here's what is owing on this judgment. Pay it or don't you. Did you have any mechanism for enforcing that yourself? For bringing — for bringing this to a head so you could have that 10-minute hearing that would have resolved all of this? I can't cite a statute, but if I can speak from personal experience, I know enough that when you have — let's say hypothetically that there was a garnishment available and my client initiated a garnishment action, it would have been under the cause number that the domesticated judgment falls under. You can file a motion. You can file a motion to compel. You can file — they could have held it in a garnishment objection proceeding. What's the amount of the judgment? It's not a very complex situation, and it's something that there are — Could they have added any — could they have tossed anything into the garnishment and action that they wanted, even if it was — even if it was different from the judgment that — in Nevada? So let's suppose that your client said, not only do we want the judgment in Nevada, but you defamed us on such and such a date when we were in Nevada, and now we're going to collect on that in Arizona as well. We're going to toss that into the garnishment. So the garnishment is in excess of the judgment in Nevada. Here's what likely would have happened. Let's say there was a bank account with $80,000 in it. We attach the bank account under the garnishment statute. At that point, he has a right under statute to object. An objection hearing is held. Then we can decide what the amount is. Or alternatively, the bank can say, no, we're not seizing all these amounts because the face of your judgment isn't for $79,000, it's for $36,000. This is all we're going to hold pursuant to the writ of garnishment until a judge tells us we need to do otherwise. So there are – it's hard to answer the question, but no, you can't simply throw in additional sums to your judgment if it's not on the judgment. Now, whether or not – Okay, but isn't that effectively what your clients did here? No, there was no seizure of property of any kind, nor was there an attempt to seize any property of Mr. Mankin's. Well, but they refused to remove the lien on his property. They refused to give him away so he can clear his title and sell the property until they paid not only the judgment, but also additional sums which they claimed were owing. That's – That looks like a separate action that they've now tacked onto the judgment they have in Nevada. Well, there's no question that the additional negotiations that went between the parties is an additional action to the domestication, yes. And the letters are in the record, and I think that's an accurate summary. But they've got him over a barrel because they've got – they've got this lien, which he is willing now to satisfy. He's come to a reluctant conclusion. He is now willing to satisfy the judgment in Nevada out of the proceeds of his property. But now they're sort of holding the property hostage. It's a little bit of an extortion. At least it can be characterized that way that says, well, now we not only want the satisfaction of the Nevada judgment, but you've put us to a lot of trouble, and we want our attorney's fees, and we want additional amounts, you know, adding up to whatever it was, $30,000, and you're going to pay us that out of the proceeds as well, or we're not going to let the lien go. Why isn't that an additional action? It is an additional action. It's not a sufficient additional action. And why isn't it sufficient? All it is, again, all it is is a letter between attorneys, telephone calls between attorneys. Those are still the only contacts that are allowed. But that's not the effects test you're applying now. Well, then under the effects test, I think what you can do then is look at the way that Judge Mergia analyzed the situation and said, and she did cite a couple of cases involving garnishment and attachment, that said even your participation in those types of actions are still not sufficient for personal jurisdiction. And even though we don't have an actual formal attachment or garnishment situation here, all we have are letters, even if there had been something more formal. The letters are sent to Arizona, aren't they? They are. Would you comment on the issue that I raised with opposing counsel, and that is that under normal real property practice, there would have been a way for Mr. Mencken to have a title company right over the effects of the abstract adjustment. They would have had to make some kind of financial arrangements with the title company, but they could have delivered good title. Would you comment from your perspective on what effect, if any, the ability of Mr. Mencken to do that has on the effect of the filing of the abstract of judgment in Arizona? Well, I think you're absolutely right. Title companies do that. It's a nonconsensual lien. It is something that can be written around and is written around. Had that happened, obviously the rug is pulled out underneath Mr. Mencken's entire case, and yes, you certainly then minimize the effect of the situation, which was a refusal to satisfy the lien. That suggests then that Mr. Mencken had a self-help remedy available to him. Is that right? I mean, now he's hollering about things that he could have written around. Yes. Yes. He was angry. And he was not he was angry with the situation. I don't know whether we characterize it as self-help or actually something that, yes, he could have done with the assistance of a title company, and certainly he was using a title company for this transaction. Why that didn't occur, I don't know. It's not clear on the record. But you do feel that it is in at least some way has some impact on the, what shall I call it, the quantum of effect that occurred in this case. We've got some fairly minimal context here. That's what we all struggle with. And I'm just interested in your perception of how the ability to have this written around and, in fact, the whole thing go away for purposes of the underlying action, what impact that has on these minimum context. Yes. And I think it does. It certainly minimizes. Well, I'm not sure about the context themselves, but it certainly minimizes the effect that the alleged action had in this case. But there's nothing on the record on that before us. The ability to have written? No. I don't believe so, Your Honor. All right. Thank you, Counsel. Thank you. And it is, indeed, speculative as to whether or not anything could have been done to minimize the effect. It could have been that the buyers of this property threw that hat up in horror and said, we don't want to deal with a messy transaction where their judgment leads to someone suing Mr. Minkins. Mr. Minkins is involved in the struggle. We're going to do elsewhere. Who knows? So that ultimately is an issue for trial. It goes to damages and causation issues. But I don't think it goes to jurisdictional issues. You know, we've had two concessions from counsel, which I welcome. One is that the effects test does apply, and that's good. And the other is that his clients were, indeed, trying to get money more than what they're entitled to. And I think that's clear from the record, but it's been stated. It's worth noting that while the motion to dismiss was pending, they actually went to the district court in Nevada to renew the judgment. This is in the record. And actually, in doing so, confirmed that it was, indeed, for the much, much lower amount. So I think it's clear what was going on there. If all that happened here was they domesticated the judgment and never sought any extra money for investigative costs or attorney's fees to locate the Menckens, would you be making the same argument now? Well, I don't think we'd be having a lawsuit because they were perfectly entitled to go after their judgment. And I think that ultimately is the flaw in counsel's argument, that he's arguing as though this whole action was about whether or not they were entitled to try to domesticate and enforce the judgment. They had every right to do that. But that's not what the lawsuit is about. The lawsuit is about the fact that they were trying to get the money over the judgment. And that's what has caused all of this. I don't think any ñ none of ñ one has to put the judgment money aside and look only at what I would call the excess money. I could think of a few other adjectives, but let's call it the excess money. That's what the case is about. And that's not a full faith and credit thing because there's nothing in the law that entitled them to have that money. So the effect is an abusive process, basically. Indeed. That's certainly one way of looking at it. The torts that are alleged in the complaint. Indeed. I'll submit and escort his further questions. Okay. Thank you. We appreciate the argument from both counsel. Thank you very much.
judges: Goodwin, Bybee, Seabright